UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 26-cv-23153

SUPACAZ (TAIWAN) LTD. and
ANTHONY SINYARD,

     Plaintiffs,

  v.

THE INDIVIDUALS, CORPORATIONS, LIMITED
LIABILITY COMPANIES, PARTNERSHIPS, AND
UNINCORPORATED ASSOCIATIONS IDENTIFIED
ON SCHEDULE A,

     Defendants.

_____/

## **COMPLAINT**

Plaintiffs SUPACAZ (TAIWAN) LTD. ("SUPACAZ") and ANTHONY SINYARD ("SINYARD") (collectively, "Plaintiffs"), by and through undersigned counsel, hereby allege as follows against the individuals, corporations, limited liability companies, partnerships, and unincorporated associations and foreign entities identified on Schedule A[1] (collectively, "Defendants"):

### **Introduction**

1. This action has been filed by Plaintiffs to combat online counterfeiters who trade upon Plaintiffs' reputation and goodwill by selling and/or offering for sale products in connection with Plaintiffs' trademarks, which are covered by U.S. Trademark Registration Nos. 4,865,578; 6,381,931; and 6,381,932 (collectively, the "SUPACAZ Trademarks").

---

[1] Plaintiffs are attaching a redacted version of the Schedule A and intend to promptly file a motion to file the full unredacted Schedule A under seal once the Judge is assigned.

1

2. The registrations are valid, subsisting, and in full force and effect. True and correct copies of the federal trademark registration certificates for the SUPACAZ Trademarks are attached hereto as **Exhibit 1**.

3. Defendants are improperly advertising, marketing, and/or selling unauthorized and illegal products infringing upon Plaintiffs' SUPACAZ Trademarks (the "Counterfeit Products"). By selling Counterfeit Products that purport to be genuine and authorized products using the SUPACAZ Trademarks (the "SUPACAZ Products"), Defendants cause confusion and deception in the marketplace.

4. Defendants create numerous fully interactive commercial internet stores operating under the online marketplace accounts identified in Schedule A (collectively, the "Defendant Internet Stores"), including on the platforms Alibaba.com ("Alibaba"), AliExpress.com ("AliExpress"), Amazon.com ("Amazon"), DHgate.com ("DHgate"), eBay.com ("eBay"), and Walmart.com ("Walmart") (collectively, the "Marketplace Platforms").

5. Defendants design the online marketplace accounts to appear to be selling genuine SUPACAZ Products, while selling inferior imitations of such products.

6. Defendants' online marketplace accounts also share unique identifiers, such as design elements and similarities of the Counterfeit Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

7. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. The Plaintiffs are forced to file this action to combat Defendants' counterfeiting of the SUPACAZ Trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products.

2

8.     As a result of Defendants' actions, Plaintiffs have been and continue to be irreparably damaged through consumer confusion, dilution, and tarnishment of their valuable trademarks and goodwill, and, therefore, seek injunctive and monetary relief.

9.     This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Florida and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Florida and in this Judicial District.

10.     In addition, each Defendant has offered to sell and ship and/or sold and shipped infringing products into this Judicial District.

## Subject Matter Jurisdiction

11.     This Court has original subject matter jurisdiction over the trademark infringement and false designation of origin claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

12.     This Court has jurisdiction over the unfair competition claim in this action that arises under the laws of the State of Florida pursuant to 28 U.S.C. § 1367(a), because the state law claim is so related to the federal claims that it forms part of the same case or controversy and derives from a common nucleus of operative facts.

## Personal Jurisdiction and Venue

13.     Personal jurisdiction exists over Defendants in this Judicial District pursuant to Florida Statutes §§ 48.193(1)(a)(1)–(2) and 48.193(1)(a)(6), or in the alternative, Fed. R. Civ. P. 4(k) because, upon information and belief, Defendants regularly conduct, transact, and/or solicit business in Florida and in this Judicial District, and/or derive substantial revenue from business transactions in Florida and in this Judicial District, and/or otherwise avail themselves of the

3

privileges and protections of the laws of the State of Florida such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in Florida and in this Judicial District such that Defendants should reasonably expect such actions to have consequences in Florida and this judicial District.

14.     Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including those in Florida, in this Judicial District, through accounts with the Marketplace Platforms as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants, and all persons in active concert or participation with any of them ("User Account(s)"), through which consumers in the U.S., including Florida (and more particularly, in this Judicial District), can view the one or more of Defendants' online marketplace accounts that each Defendant operates ("Defendant Internet Stores"), uses to communicate with Defendants regarding their listings for Counterfeit Products (as defined infra) and to place orders for, receive invoices for, and purchase Counterfeit Products for delivery in the United States, including Florida (and more particularly, in this Judicial District), as a means for establishing regular business with the United States, including Florida (and more particularly, in this Judicial District).

15.     Upon information and belief, Defendants have transacted business with consumers located in the United States, including Florida (and more particularly, in this Judicial District), for the sale and shipment of Counterfeit Products.

16.     Venue is proper in this Court pursuant to at least 28 U.S.C. §§ 1391(b)(2) and 1400(a) because Defendants have committed acts of copyright infringement and trademark infringement in this Judicial District and do substantial business in the Judicial District.

## THE PLAINTIFFS

17.     Plaintiff Supacaz (Taiwan) Ltd. is a limited company, with its principal place of business in Taipei, Japan.

18.     Plaintiff Anthony Sinyard is the founder and owner of Supacaz (Taiwan) Ltd. and is the registered owner of the SUPACAZ Trademarks (attached as Exhibit 1):

| U.S. TM Reg. No. | Trademark | Registration Date |
|---|---|---|
| 4,865,578 | | December 8, 2015 |
| 6,381,931 | SUPACAZ | June 8, 2021 |
| 6,381,932 | SUPACAZ | June 8, 2021 |

## THE DEFENDANTS

19.     Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China, or other foreign jurisdictions.

20.     Defendants are merchants on online e-commerce platforms, including the Marketplace Platforms.

5

**THE SUPACAZ PRODUCTS**

21.     SUPACAZ, founded in 2013 by SINYARD, is a leading cycling accessories brand offering high-performance and stylish cycling accessories, apparel, tools and shoes.

22.     From the date of the creation of the first SUPACAZ Products to the present, Plaintiffs and their authorized retailers are and have been the sole and official source of genuine SUPACAZ Products in the United States and Florida. SUPACAZ's promotional efforts for the SUPACAZ Products include, by way of example, but not limitation, the www.supacaz.com websites, online advertising, and social media advertising campaigns.



### Super Sticky Kush Star Fade – Celeste

**$45.00**

#### 7x World Champ

Super Sticky Kush has racked up 7 championships in just 10 years. Fusing performance and style, Supacaz delivers the only bar tape worth dreaming about. We boldly claim that Super Sticky Kush is the best bar tape ever and that's backed up by being the world's #1 selling bar tape.

- Tackiest/Best Hand Feel
- Long Lasting PU Tape
- Star Plugz
- High-End Rubberized Finishing Tape

Material: PU Length: 2200mm Width: 30mm Thickness: 2.5mm

### Krypto Pedals – Alloy – Black

**$150.00**



Get ready to fly high with the Krypto pedals. Built tough with its CNC'ed aluminum body and self-lubricating bushings, this pedal makes a big statement on the trail with full laser graphics and premium finish. Ten strategically placed pins keep you in maximum control.

 ADD TO CART

*Example of SUPACAZ Products Incorporating the SUPACAZ Trademarks*

6

23.     Since at least 2013, Plaintiffs have developed and marketed high-performance cycling accessories, apparel, tools, and shoes, the SUPACAZ Products, incorporating the SUPACAZ Trademarks. The SUPACAZ Trademarks are and have been the subject of substantial and continuous marketing and promotion by Plaintiffs. Plaintiffs have and continue to widely market and promote the SUPACAZ Trademarks in the industry and to consumers.

24.     The registrations for the SUPACAZ Trademarks constitute *prima facie* evidence of their validity and of Plaintiffs' exclusive right to use the trademarks pursuant to 15 U.S.C. § 1057(b).

25.     Each of the SUPACAZ Trademarks qualifies as a famous mark, as that term is used in 15 U.S.C. §1125(c)(1), and each has been continuously used and never abandoned. Since Plaintiffs launched the SUPACAZ Products, SUPACAZ has followed a defined strategy for positioning its brand, marketing, and promotion of the product line in the industry and to consumers, and establishing distribution channels. Plaintiffs' promotional efforts for the SUPACAZ Products include, by way of example but not limitation, the www.supacaz.com website, online advertising, and social media advertising campaigns. Plaintiffs have expended substantial time, money, and other resources in advertising and otherwise promoting the SUPACAZ Products.

26.     The SUPACAZ Products have become enormously popular, driven by Plaintiffs' arduous quality standards and innovative trademarked designs. These designs are broadly recognized by consumers as being sourced from Plaintiffs. Products fashioned after these designs are associated with the quality and innovation that the public has come to expect from Plaintiffs and their SUPACAZ Products.

**THE DEFENDANTS' UNLAWFUL CONDUCT**

27.     The success of the SUPACAZ Products has resulted in significant counterfeiting. Plaintiffs have identified numerous Defendant Internet Stores linked to fully interactive websites on e-commerce sites including the Marketplace Platforms. These Defendant Internet Stores offer for sale, sell, and import Counterfeit Products to consumers in this Judicial District and throughout the United States.

28.     Defendants have persisted in creating such online marketplaces and internet stores, like the Defendant Internet Stores. In fact, such online marketplaces and stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2023 was over $2.7 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

29.     On personal knowledge and belief, Defendants facilitate sales by designing the Defendants' Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine SUPACAZ Products. Many of the Defendants' Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

30.     Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to

associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

31. Plaintiffs have not licensed or authorized Defendants to use the SUPACAZ Trademarks, and none of the Defendants is an authorized retailer of the genuine SUPACAZ Products.

32. On personal knowledge and belief, Defendants also deceive unknowing consumers by using without authorization the SUPACAZ Trademarks within the product descriptions, content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for SUPACAZ Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization ("SEO") tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine SUPACAZ Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. As such, Plaintiffs also seek to disable the Defendant Internet Stores owned and/or operated by Defendants that are the means by which Defendants could continue to sell Counterfeit Products into this Judicial District.

33. On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, it is common practice for counterfeiters to register their domain names and/or User Accounts with incomplete information, randomly typed letters, or omitted cities or states.

34. On personal knowledge and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A, as well

as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

35.     On personal knowledge and belief, even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendants' Internet Stores. For example, some of the Defendant marketplace websites have virtually identical layouts, even though different aliases were used to register the respective domain names.

36.     In addition, the Counterfeit Products for sale in the Defendants' Internet Stores bear similarities and indicia of being related to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

37.     The Defendants' Internet Stores also include other notable common features, including accepted payment methods, check-out methods, metadata, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

38.     In addition, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under User Accounts once they receive notice of a lawsuit.[2]

---

[2] https://www.ice.gov/news/releases/buyers-beware-ice-hsi-and-cbp-boston-warn-consumers-about-counterfeit-goods-during (noting counterfeiters are adept at "setting up online stores to lure the public into thinking they are purchasing legitimate goods on legitimate websites") (last visited May 1, 2026).

39. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners.[3]

40. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by United States Customs and Border Protection. A 2012 United States Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

41. Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiffs' enforcement efforts.

42. On personal knowledge and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts outside the jurisdiction of this Court.

43. Defendants, without any authorization or license from Plaintiffs, have knowingly and willfully used and continue to use the SUPACAZ Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Florida over the Internet.

---

[3] While discussed in the context of false pharma supply chains, rogue internet servers and sellers are a well-known tactic that have even been covered in congressional committee hearings. https://www.govinfo.gov/content/pkg/CHRG-113hhrg88828/html/CHRG-113hhrg88828.htm (last visited May 1, 2026).

44.     Each Defendant Internet Store offers shipping to the United States, including Florida (in this Judicial District) and, on information and belief, each Defendant has offered to sell counterfeit SUPACAZ Products into the United States, including Florida (in this Judicial District).

45.     Defendants' use of the SUPACAZ Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiffs.

46.     Prior to and contemporaneous with their counterfeiting actions alleged herein, Defendants had knowledge of Plaintiffs' ownership of the SUPACAZ Trademarks, of the fame and incalculable goodwill associated therewith, and of the popularity and success of the SUPACAZ Products, and in bad faith proceeded to manufacture, market, develop, offer to be sold, and/or sell the Counterfeit Products.

47.     Defendants have been engaging in the illegal counterfeiting actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiffs' rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiffs and the SUPACAZ Products.

## FIRST CAUSE OF ACTION
## TRADEMARK INFRINGEMENT AND COUNTERFEITING
### (15 U.S.C. § 1114 *et seq.*)

48.     Plaintiffs repeat and incorporate by reference herein their allegations contained in paragraphs 1-47 of this Complaint.

49.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered SUPACAZ Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of counterfeit goods.

The SUPACAZ Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Plaintiffs' products provided under the SUPACAZ Trademarks.

50.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the SUPACAZ Trademarks without Plaintiffs' permission.

51.     SINYARD is the registered owner of the SUPACAZ Trademarks and SUPACAZ is the official source of SUPACAZ Products. The United States Registrations for the SUPACAZ Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiffs' rights in the SUPACAZ Trademarks and are willfully infringing and intentionally using counterfeits of the SUPACAZ Trademarks. Defendants' willful, intentional, and unauthorized use of SUPACAZ Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

52.     As just one example, Defendants deceive unknowing consumers by using the SUPACAZ Trademarks without authorization within the product descriptions of their online marketplace accounts to attract customers as follows:



*Exemplar of Counterfeit Product Sold by Defendant Infringing on Plaintiffs' Trademarks*

53.     Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

54.     The injuries and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

55.     Plaintiffs have no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their well-known SUPACAZ Trademarks.

## SECOND CAUSE OF ACTION
## FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(a) *et seq.*)

56.     Plaintiffs repeat and incorporate by reference herein their allegations contained in paragraphs 1-47 of this Complaint.

14

57. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiffs.

58. By using the SUPACAZ Trademarks in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

59. Defendants' conduct constitutes willful false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public under 15 U.S.C. §§ 1114, 1125.

60. Plaintiffs have no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their brand.

## THIRD CAUSE OF ACTION
## COMMON LAW UNFAIR COMPETITION

61. Plaintiffs repeat and incorporate by reference herein their allegations contained in paragraphs 1-47 of this Complaint.

62. Plaintiffs have not licensed or authorized Defendants to use the SUPACAZ Trademarks, and none of the Defendants are authorized retailers of genuine SUPACAZ Products.

63. Defendants knowingly and intentionally trade upon Plaintiffs' reputation and goodwill by selling and/or offering for sale products in connection with SUPACAZ Trademarks.

64. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the quality, affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiffs in violation of Florida's common law of unfair competition.

15

65.     Defendants knew, or should have known, that their promotion, marketing, offering for sale, and sale of Counterfeit Products has caused and will continue to cause confusion, mistake, and deception among purchasers, users, and the public.

66.     In fact, Defendants have fraudulently represented by their statements and actions that the Counterfeit Products are Plaintiffs' products including, for example, by: (i) using SEO tactics and social media to misdirect customers seeking SUPACAZ Products to the Defendants' Internet Stores; (ii) using deceptive advertising practices within the text and metadata of the online marketplace accounts; and (iii) taking other steps to deceive and confuse the consuming public.

67.     On information and belief, Defendants' conduct is willful and intentional as Defendants attempt to avoid liability by concealing their identities, using multiple fictitious names and addresses to register and operate their illegal counterfeiting operations and Defendant Internet Stores.

68.     Plaintiffs have no adequate remedy at law, and Defendants' conduct has caused Plaintiffs to suffer damage to their reputation and goodwill. Unless enjoined by the Court, Plaintiffs will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment on all Counts of this Complaint and an award of equitable and monetary relief against Defendants as follows:

1.     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a.     using the SUPACAZ Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a SUPACAZ Product or is not authorized by Plaintiffs to be sold in connection with the SUPACAZ Trademarks;

b.     passing off, inducing, or enabling others to sell or pass off any product as a genuine SUPACAZ Product or any other product produced by Plaintiffs that is not Plaintiffs' or

16

not produced under the authorization, control, or supervision of Plaintiffs and approved by Plaintiffs for sale under the SUPACAZ Trademarks;

c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

d. further infringing the SUPACAZ Trademarks and damaging Plaintiffs' goodwill;

e. otherwise competing unfairly with Plaintiffs in any manner;

f. shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which bear any Plaintiffs trademark, including the SUPACAZ Trademarks;

g. using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts, the Defendant Domain Names, or any other domain name or Online Marketplace Account that is being used to sell or is the means by which Defendants could continue to sell Counterfeit Products; and

h. operating and/or hosting websites at the Defendant Domain Names that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the SUPACAZ Trademarks that is not a genuine SUPACAZ Product or not authorized by Plaintiffs to be sold in connection with the SUPACAZ Trademarks.

2. Entry of an Order that Alibaba, AliExpress, Amazon, DHgate, eBay, Walmart, and any other online marketplace account provider:

a. disable and cease providing services for any accounts through which Defendants engage in the sale of Counterfeit Products, including any accounts associated with Defendants listed on Schedule A;

b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Counterfeit Products; and

17

c.      take all steps necessary to prevent links to the Defendant Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index.

3.      That Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the SUPACAZ Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117.

4.      In the alternative, that Plaintiffs be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 for each and every use of the SUPACAZ Trademarks.

5.      That Plaintiffs be awarded their reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117 (a) and (b); and

6.      Award any and all other relief that this Court deems just and proper.

Dated:    May 4, 2026                          Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

*/s/ Nicole Fundora*
Nicole Fundora (FL Bar No. 1010231)
100 SE 2nd Street
Suite 2800
Miami, FL 33131
Telephone: (305) 539-8400
nfundora@bsfllp.com

***Counsel for Plaintiffs SUPACAZ (TAIWAN) LTD. and ANTHONY SINYARD***

18